Christopher P. Malloy
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Plaintiff
Oppenheimer & Co. Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
OPPENHEIMER & CO. INC.

                Plaintiff,

   - against -

METAL MANAGEMENT, INC.,

                Defendant.
---------------------------------- x

No.



## COMPLAINT

Oppenheimer & Co. Inc. ("Oppenheimer" or "Plaintiff"), by and through its undersigned counsel, alleges on personal knowledge as to its own acts and on information and belief as to all other matters, as follows:

### SUMMARY OF CLAIMS

1.     This action arises out of the refusal by Metal Management, Inc. ("Metal Management"), to pay at least $8,023,262 in fees plus expenses due to Oppenheimer pursuant to a letter agreement dated as of August 1, 2007 by and among CIBC World Markets Corp. ("CIBC") and Metal Management (the "Letter Agreement").

2. CIBC assigned the Letter Agreement, including its right to payment of any fees, to Oppenheimer as of January 14, 2008, in connection with CIBC's sale of its domestic investment banking business to Oppenheimer.

3. Under the Letter Agreement, Metal Management engaged CIBC to act as exclusive financial advisor to Metal Management "in connection with a possible (a) merger or other business combination . . . involving Metal Management or (b) sale or other transfer . . . of all or substantially all of the assets or securities of Metal Management . . . ."

4. On September 24, 2007 the boards of directors of Metal Management and Sims Group Ltd. ("Sims") approved, and the companies executed, a merger agreement.

5. On March 14, 2008, after the stockholders of Metal Management approved the transaction, the merger (the "Sims Merger") between Metal Management and Sims was consummated. Metal Management now operates as a wholly owned subsidiary of Sims.

6. In connection with the Sims Merger, CIBC performed extensive work on behalf of Metal Management. Among other things, CIBC provided financial analysis and advice to Metal Management's board of directors, assisted in due diligence and participated in the negotiation of key provisions of the transaction.

7. Further, at the request of the Metal Management board of directors, on September 24, 2007, CIBC rendered an opinion as to the fairness, from a financial

point of view, to Metal Management, and its shareholders, of the consideration to be received by Metal Management in connection with the Sims Merger.

8. Pursuant to the Letter Agreement, Metal Management agreed to pay (1) an engagement fee of $50,000, upon execution of the Letter Agreement; (2) an opinion fee of $750,000, payable when CIBC rendered its fairness opinion; and (3) a transaction fee equal to 0.50% of the value of the transaction Metal Management enters into, payable upon consummation of the transaction.

9. Metal Management failed to pay the transaction fee when the Sims Merger was consummated on March 14, 2008. The transaction fee, based on the value of the consideration received by Metal Management in the Sims Merger and Metal Management debt, amounts to $8,023,262.

10. Metal Management was further obligated to reimburse CIBC for its reasonable expenses in the amount of $144,845 incurred in connection with rendering its services under the Letter Agreement.

11. The $750,000 opinion fee became due upon CIBC's rendering of its fairness opinion on September 24, 2007, but it was not paid until March 12, 2008.

12. Oppenheimer brings this action to recover damages from Metal Management for the intentional breach of its obligations under the Letter Agreement.

## THE PARTIES

13. Plaintiff Oppenheimer is a New York Corporation with its principal offices located at 125 Broad Street, 16th Floor, New York, New York 10004.

Oppenheimer is a leading investment bank and full-service investment firm that provides financial services and advice to high net worth investors, individuals, businesses and institutions.

14. Defendant Metal Management is a Delaware corporation with its principal offices located at 325 North LaSalle Street, Suite 550, Chicago, Illinois 60610. Metal Management is one of the largest full service metal recyclers in the United States.

## JURISDICTION AND VENUE

15. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. Pursuant to the express terms of the Letter Agreement, Metal Management consented to the personal jurisdiction of this Court "for the purpose of any suit, action or other proceeding arising out of this letter agreement . . . ."

17. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York; and pursuant to 28 U.S.C. § 1391(c), because this Court has personal jurisdiction over Metal Management.

## BACKGROUND

### The Letter Agreement

18. On or about August 1, 2007, Metal Management and CIBC entered into the Letter Agreement. Pursuant to the Letter Agreement, CIBC would act as "exclusive financial advisor" to Metal Management:

4

> [I]n connection with a possible (a) merger or other business combination, whether in one or a series of transactions including without limitation, a forward or reverse triangular merger, involving Metal Management or (b) sale or other transfer, directly or indirectly and whether in one or a series of related transactions, of all or substantially all of the assets or securities of Metal Management, regardless of the form or structure of such transaction (each such transaction being referred to herein as the "Transaction").

19. Pursuant to the Letter Agreement, Metal Management promised to pay to CIBC and its assigns fees as follows:

> (a) an engagement fee of $50,000, payable cash upon execution of this letter agreement, plus (b) if [Metal Management] requests that CIBC World Markets provide an Opinion, [Metal Management] agrees to pay CIBC World Markets an opinion fee of $750,000, payable in cash upon the earlier of oral or written delivery of an Opinion, plus (c) a transaction fee equal to 0.50% of Transaction Value (as defined below), payable in cash on the closing date of each Transaction if, during this engagement or within nine (9) months thereafter, a Transaction is consummated or an agreement is entered into that subsequently results in a Transaction. If a Transaction is not consummated, but [Metal Management] receives a "break-up" fee or any other payment as a result of the termination of the Transaction or realizes any profits from the exercise of any options or warrants granted to [Metal Management] in connection with the Transaction, then [Metal Management] will pay to CIBC World Markets a fee equal to 10% of such fee, profit or payment, payable in cash when any such amount is paid to [Metal Management] or any such option or warrant exercised.

20. Transaction Value, under the Letter Agreement, is defined as:

> [T]he total value of all consideration (including cash, securities or other property) paid or received or to be paid or received, directly or indirectly, in connection with a Transaction in respect of assets or outstanding securities on a fully diluted basis (treating any securities issuable upon the exercise of options, warrants or other convertible securities and any securities to be redeemed as outstanding, whether or not vested, provided, however, that options and warrants will calculated [sic] at their net exercise value), plus the principal amount of any bank debt outstanding as of the closing date of a Transaction or directly or indirectly assumed, refinanced or extinguished in connection with a Transaction. If any portion of Transaction Value is payable in the form of securities, the value of such securities, for purposes of calculating our transaction fee, will be

5

determined based on the average closing price for such securities for the 10 trading days prior to the closing of the Transaction. . . .

21.   Metal Management also promised in the Letter Agreement "to periodically reimburse CIBC . . . promptly when invoiced for all of its reasonable and documented expenses (including reasonable and documented fees and expenses of its legal counsel) in connection with the performance of its services [under the Letter Agreement] . . . , provided that, except as otherwise contemplated by Annex A [of the Letter Agreement], expenses in excess of $75,000 will require the consent of [Metal Management] (which consent will not be unreasonably withheld)."

22.   Metal Management also promised in the Letter Agreement to pay CIBC and its affiliates "all fees and expenses (including the fees and expenses of counsel) . . . as incurred . . . in enforcing this letter agreement."

**<u>The Assignment of the Letter Agreement</u>**

23.   The Letter Agreement provides as follows with respect to assignments:

> All rights, liabilities and obligations []under [the Letter Agreement] will be binding upon and inure to the benefit of [Metal Management], CIBC . . ., each Indemnified Party . . . and their respective successors and assigns.

24.   Effective January 14, 2008 Oppenheimer purchased from CIBC certain assets pertaining to its domestic investment banking business.

25.   In connection with the transaction, CIBC assigned all rights under the Letter Agreement to Oppenheimer effective January 14, 2008.

26.  Metal Management was given notice, and was otherwise aware, of the assignment of the Letter Agreement to Oppenheimer. As set forth below, without objection, Metal Management continued to receive the benefits of the Letter Agreement after the effective date of the assignment.

**Services Were Fully Performed Under the Letter Agreement**

27.  Starting in late April, 2007, CIBC provided financial advisory services to Metal Management, including evaluation, preliminary discussions, negotiation, calculation, and structuring of a proposed transaction with Sims, which eventually led to the completed merger of Metal Management and Sims on March 14, 2008.

28.  Because the Sims Merger required the approval of Metal Management's stockholders, Metal Management was required to prepare a proxy statement and deliver it to its stockholders in advance of the stockholders' meeting scheduled for March 14, 2008 at which the transaction would be put to a vote.

29.  In the final proxy statement (the "Proxy Statement"), which was delivered to Metal Management's stockholders and filed with the United States Securities and Exchange Commission ("SEC") on February 12, 2008, Metal Management provided details of CIBC's extensive involvement in the events leading up to the execution of the merger agreement. For example:

(a) On April 28, 2007, CIBC and Sims's financial advisor discussed a possible transaction involving the two companies.

(b) On June 18, 2007, CIBC met with representatives of both companies, Sims's financial advisor and Metal Management's legal counsel to discuss Sims's merger proposal.

7

(c)  On June 22, 2007, CIBC met with representatives of both companies, Sims's financial advisor and legal counsel as well as Metal Management's legal counsel to discuss the relative financial contributions of the companies and review their respective financial information.

(d)  On June 27, 2007, CIBC along with Sims, Metal Management, Sims's legal counsel, tax advisor and financial advisor had a conference call to discuss tax issues.

(e)  On July 2, 2007, CIBC and Sims's financial advisor discussed relative valuation of the companies.

(f)  On July 7, 2007, CIBC discussed the timing of the merger and the companies' due diligence process with members of both companies' legal advisors and Sims's financial advisor.

(g)  On July 10, 2007, CIBC attended an environmental due diligence call and discussed evaluation details with Sims's financial advisor.

(h)  On July 29, 2007, CIBC discussed the financial aspects of the proposed merger with Sims with Metal Management's board.

(i)  On August 1, CIBC and Sims's financial advisor discussed the latest merger proposal.

(j)  On August 2, 2007, CIBC discussed the financial details of Sims's latest merger proposal with Metal Management's board.

(k)  On August 30, 2007, CIBC discussed valuation matters with Sims's financial advisor.

(l)  At meetings of Metal Management's board on September 5 and 6, 2007, CIBC updated the board on financial aspects of the proposed merger.

(m)  On September 21, 2007, the board of Sims instructed its financial advisor to continue discussions with CIBC regarding the merger's exchange ratio.

(n)  In the morning of September 23, 2007, CIBC provided Metal Management's board with updated financial terms of the proposed merger. The board instructed CIBC as to its negotiations on behalf of Metal Management, and CIBC subsequently negotiated further with Sims's financial advisor.

(o)  In the afternoon of September 23, 2007, CIBC updated the Metal Management board on its discussions with Sims's financial advisor.

(p)  On the morning of September 24, 2007, CIBC reviewed with the Metal Management board its financial analysis of the exchange ratio and rendered an

8

oral opinion, later confirmed by delivery of a written opinion as of the same date, as to the fairness, from a financial point of view, of the exchange ratio provided for in the merger.

30. The Proxy Statement further disclosed that Metal Management's board of directors had relied on CIBC's September 24, 2007 fairness opinion in reaching its conclusion to recommend the merger with Sims to Metal Management's shareholders.

31. After the merger agreement was signed, CIBC continued to assist Metal Management in connection with the Sims Merger. CIBC continued to provide Metal Management with background information, evaluation models and other materials, and tracked both companies' stock prices. CIBC and its legal counsel, Dewey & LeBoeuf LLP, as CIBC's agent, played an active role in drafting, revising and commenting on sections of the Proxy Statement.

32. By the time CIBC's investment banking business was transferred to Oppenheimer effective January 14, 2008, substantially all the services contemplated by the Letter Agreement had been performed. After the assignment, Oppenheimer and its legal counsel, Dewey & LeBoeuf LLP, continued to review and comment on drafts of the Proxy Statement, at the request of Metal Management through its legal counsel, and performed other work under the Letter Agreement.

33. Metal Management at no time gave notice of termination of the Letter Agreement.

34. Metal Management acknowledged in the Proxy Statement that it owed CIBC the amounts due under the Letter Agreement for the services rendered. The Proxy Statement provides as follows:

9

> Metal Management has agreed to pay CIBC . . . for its financial advisory services in connection with the merger an aggregate fee estimated to be approximately $8.8 million, a portion of which was payable in connection with CIBC['s] . . . engagement, a portion of which was payable upon delivery of its opinion and approximately $8 million of which is contingent upon consummation of the merger. In addition, Metal Management has agreed to reimburse CIBC . . . for its reasonable expenses, including reasonable fees and expenses of its legal counsel. . . .

35.  Nowhere in the Proxy Statement did Metal Management disclose that it believed the Letter Agreement had been breached.

36.  The statements made by Metal Management in the Proxy Statement regarding CIBC, the services provided by CIBC and the fees owed to CIBC were true and accurate, as of February 12, 2008, when the Proxy Statement was filed with the SEC, and as of March 14, 2008, when Metal Management's stockholders met to vote on the Sims Merger.

**Sims-Metal Management Merger Is Consummated**

37.  On March 14, 2008, Metal Management announced that its shareholders approved the adoption of the merger agreement with Sims at a special shareholders' meeting and that the merger with Sims became effective the same day.

38.  Under the terms of the merger agreement between Metal Management and Sims, Metal Management stockholders will receive 2.05 Sims American Depository Shares for each share of Metal Management common stock. The merger valued Metal Management at approximately $1,604,700,000.

39. In breach of its obligations under the Letter Agreement, Metal Management continues to refuse to pay any amounts due and outstanding under the Letter Agreement.

## CAUSE OF ACTION

### (For Breach Of Contract)

40. Oppenheimer repeats and realleges each of the preceding paragraphs of the Complaint as if fully set forth herein.

41. The Letter Agreement between Metal Management and CIBC is a valid and binding contract.

42. CIBC assigned the Letter Agreement to Oppenheimer effective January 14, 2008.

43. On March 14, 2008, the Sims Merger was consummated. Upon consummation of the Sims Merger, a Transaction under the Letter Agreement, Metal Management was obligated to pay the transaction fee, amounting to $8,023,262 to CIBC or its assignee.

44. CIBC and Oppenheimer incurred expenses of $144,845 in connection with performing services under the Letter Agreement. Upon consummation of the Sims Merger, Metal Management was obligated to pay CIBC's and Oppenheimer's reasonable expenses.

45. As a result of Metal Management's breach, Oppenheimer has suffered damages in the amount of at least $8,168,107.

11

46.     Metal Management further agreed in the Letter Agreement to pay CIBC and its assigns for their fees and expenses, including fees and expenses of counsel, as incurred, in connection with enforcing the Letter Agreement.

47.     Oppenheimer has incurred and will continue to incur fees and expenses in connection with enforcing the Letter Agreement including its fees and expenses of this action.

WHEREFORE, Plaintiff demands judgment as follows:

(i)     Awarding Plaintiff damages, in an amount to be determined at trial.

(ii)    Awarding Plaintiff costs and disbursements, including its reasonable attorneys' fees, incurred in this action as a matter of law and pursuant to the Letter Agreement; and

(iii)   Granting Plaintiff such other, further or different relief as the Court may deem just and proper.

Dated:      April 17, 2008

Christopher P. Malloy
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Plaintiff
Oppenheimer Co. Inc.

12